### UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF ARIZONA

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | **CR 08-0947-PHX-NVW** |
| | ) | |
| vs. | ) | Phoenix, Arizona |
| | ) | May 6, 2009 |
| **AKRAM MUSA ABDALLAH,** | ) | 3:54 p.m. |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

BEFORE:  THE HONORABLE MICHELLE H. BURNS, MAGISTRATE JUDGE

### TRANSCRIPT OF PROCEEDINGS

### PLEA HEARING

APPEARANCES:

For the Government:
        U.S. Attorney's Office
        By:  **DAVID A. PIMSNER**, ESQ.
        40 North Central Avenue, Suite 1200
        Phoenix, AZ  85004

For the Defendant Abdallah:
        Law Offices of Joseph Shemaria
        By: **JOSEPH SHEMARIA**, ESQ.
        2029 Century Park E, Suite 1400
        Los Angeles, CA  90067

Transcriptionist:
Linda Schroeder
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc. 32
Phoenix, Arizona  85003-2151
(602) 322-7249

Proceedings Recorded by Electronic Sound Recording
Transcript Produced by Transcriptionist

1          THE CLERK:  Case number CR 08-947, United States of

2    America versus Akram Musa Abdallah, on for change of plea

3    hearing.

4          MR. PIMSNER:  Good afternoon, Your Honor.  David

5    Pimsner appearing on behalf of the United States.  Present with

6    me is Special Agent Andy Braun with the FBI.

7          THE COURT:  All right.  Good afternoon.

8          SPECIAL AGENT BRAUN:  Good afternoon.

9          MR. SHEMARIA:  Good afternoon, Your Honor.  Joseph

10   Shemaria appearing with my client Mr. Akram Musa Abdallah.

11         THE COURT:  All right.  Good afternoon, sir.

12         THE DEFENDANT:  Good afternoon.

13         THE COURT:  Good afternoon, Mr. Abdallah.  Are you

14   ready to proceed?

15         MR. SHEMARIA:  We are.

16         THE COURT:  You can come to the podium, then, with

17   your client, please.

18         All right, sir.  It is my understanding that you are

19   here to change your plea today.  Before we can get started, I

20   want to make sure you understand that you do have the right to

21   change your plea before a district judge.  I am a magistrate

22   judge.  District judges are in effect higher judges than

23   magistrate judges, and they are appointed by the president of

24   the United States to serve the Court for a life term.

25         Magistrate judges are selected by the district judges

1  to serve the court.  I do not have the authority to accept your

2  plea or sentence you, but I can hear your plea and then

3  recommend to the district judge who is assigned to your case,

4  Judge Wake, recommend to him whether or not your plea should be

5  accepted.

6      I have a form here it looks like you signed today that

7  indicates to me that you understand this right I've just

8  described to you and that you want to go forward with your plea

9  before a magistrate judge.  Is that in fact how you want to

10  proceed, sir?

11      THE DEFENDANT:  Correct.

12      THE COURT:  All right.  The balance of these

13  proceedings are going to be conducted once you're placed under

14  oath.  I'm going to be asking you many questions here today,

15  and it is important that you understand all of these questions

16  and that you answer them truthfully.

17      If you were to make any false statements here today,

18  the government could use those false statements against you in

19  a separate prosecution for the crime of false statements to the

20  Court or perjury.

21      Do you understand this, sir?

22      THE DEFENDANT:  Yes, ma'am.

23      THE COURT:  At this time I'll have my courtroom deputy

24  place you under oath.

25      (Defendant sworn.)

1          THE COURT:  Mr. Abdallah, if at any point in time you

2    don't understand something that I have said here today, please

3    feel free to let me know that.  Also, if you feel you need a

4    moment at any time to speak privately with your attorney, let

5    me know that, and I will certainly afford you that opportunity.

6    Is that understood?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Is your true and complete name Akram Musa

9    Abdallah?

10          THE DEFENDANT:  Yes.

11          THE COURT:  How old are you, sir?

12          THE DEFENDANT:  Fifty -- Fifty-five.

13          THE COURT:  And how far did you go in school?

14          THE DEFENDANT:  I finished high school.

15          THE COURT:  In the past 48 hours, sir, have you had

16    any prescription medication, drugs of any kind, alcohol, or

17    anything like that that could interfere with your ability to

18    understand what's being said here today?

19          THE DEFENDANT:  No, I didn't take any.  Excuse me.

20      (Off-the-record discussion.)

21          MR. SHEMARIA:  On the education --

22          THE DEFENDANT:  On the education, I finished high

23    school.  I went to college about two years.  This is the limit

24    of my education.

25          THE COURT:  All right.  Well, it's an important two

1    years.

2            And then your answer to my other question is the same,

3    that you haven't had any of those substances.  All right.

4            Have you ever been treated for a mental illness in the

5    past or a serious emotional disorder of any kind?

6            THE DEFENDANT:  No.

7            THE COURT:  And, counsel, do you have any reason to

8    believe that your client is not competent to enter this plea

9    today?

10           MR. SHEMARIA:  None, Your Honor.

11           THE COURT:  All right.  Thank you.  All right, sir.  I

12   have a plea agreement here that is nine pages long.  It looks

13   like you signed it.  It looks like you signed it here at the

14   bottom of Page 7.  I'm going to hold up that page, and if you

15   can see it, sir, can you tell me if that's your signature

16   there?  Do you want to -- Well, you can have --

17           THE DEFENDANT:  Yes.

18           THE COURT:  All right.  Thank you.

19           Sir, before you signed -- You may resume your place.

20           Before you signed this plea agreement, did you read

21   it?

22           THE DEFENDANT:  Yes.

23           THE COURT:  Did you understand it?

24           THE DEFENDANT:  When there were things I didn't

25   understand, I asked my attorney to explain it.

1      THE COURT:  That was my next question.  Did you have

2  enough time and opportunity to discuss it with your attorney

3  and have him answer all the questions that you had about it?

4      THE DEFENDANT:  Yes, ma'am.

5      THE COURT:  Did anyone force you or threaten you or

6  coerce you into entering into this plea agreement?

7      THE DEFENDANT:  No.

8      THE COURT:  Did anyone make you any promises to get

9  you to enter into this plea agreement other than the promises

10  that are in the written agreement?

11      THE DEFENDANT:  No.

12      THE COURT:  It says here that you are going to plead

13  guilty to Count 1 of the indictment, and that charges you with

14  false statements to a government agency.  It says this occurred

15  in January of 2007.  Do you understand that charge?

16      THE DEFENDANT:  Yes.

17      THE COURT:  And are you pleading guilty voluntarily to

18  that crime, sir, because you feel you are guilty of that crime?

19      THE DEFENDANT:  Say it again.

20      THE COURT:  Are you pleading guilty voluntarily to

21  that crime because you feel you are guilty of that crime?

22      THE DEFENDANT:  I feel I accept the responsibility for

23  what I said to the agent or the FBI agent.

24      THE COURT:  Well, the question was a little bit more

25  specific than that.  You're pleading guilty to this charge in

1    an indictment.  It alleges the crime of false statement.  So by

2    pleading guilty, you are pleading guilty to that crime.  I just

3    want to make sure that you're doing this voluntarily because

4    you feel that you are guilty of the crime.

5              THE DEFENDANT:  Yes, ma'am.

6              THE COURT:  I'm now going to tell you what the maximum

7    sentence that a person convicted of this crime can receive, and

8    that is up to eight years in prison, up to a maximum fine of

9    $250,000 or both, and there is a term of supervised release of

10   up to three years that could also be imposed.

11             Do you understand these maximum penalties, sir?

12             THE DEFENDANT:  Yes.

13             THE COURT:  There's also the required payment of a

14   $100 special assessment and the payment of restitution if

15   there's any victim that suffered an economic loss.  And,

16   Mr. Pimsner, is the government going to be seeking restitution?

17             MR. PIMSNER:  No, Your Honor.

18             THE COURT:  All right.  Thank you.  All right.  Do you

19   also understand, sir, that Judge Wake, in deciding what your

20   sentence should be, he's required to consider the United States

21   Sentencing Guidelines, among other factors, but that these

22   Guidelines are only advisory, meaning he would be free to

23   reject them and impose any reasonable sentence up to the

24   maximum sentence -- or the maximum penalties that I just

25   described to you.  Do you understand this?

1          THE DEFENDANT:  Yes.

2          THE COURT:  Now, have you had a chance to discuss the

3  Sentencing Guidelines with your attorney and discuss how they

4  might apply in your case?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Now, you do have some agreements with the

7  government about your sentence.  I'm going to go over those

8  with you.  I guess the main one is that you have agreed that

9  you will be sentenced to the Bureau of Prisons for a term of

10  between 18 and 24 months.  Is that your understanding?

11          THE DEFENDANT:  Yes, ma'am.

12          THE COURT:  There's also an agreement here that the

13  government has made that if you make full and complete

14  disclosure to the probation department of the circumstances

15  surrounding your offense and you accept responsibility for your

16  offense, that -- and you are eligible for a two-point reduction

17  for acceptance of responsibility, the government is agreeing to

18  give you a three-point reduction in your guideline offense

19  level for acceptance of responsibility.  Do you understand

20  that, sir?

21          THE DEFENDANT:  Yes.  I need to ask --

22          THE COURT:  Take a moment.

23      (Off-the-record discussion.)

24          THE DEFENDANT:  Yes, ma'am, I understand.

25          THE COURT:  All right.  And the important thing to

| | |
|---|---|
| 1 | know about that is that although the government has agreed to |
| 2 | give you that three-point reduction, it is still dependent upon |
| 3 | you doing those things.  You'll have to accept responsibility |
| 4 | for your offense and make that disclosure to the probation |
| 5 | department.  Do you understand what that means? |
| 6 | THE DEFENDANT:  I know, and that's right. |
| 7 | THE COURT:  All right. |
| 8 | (Off-the-record discussion.) |
| 9 | THE DEFENDANT:  Yes, ma'am. |
| 10 | THE COURT:  All right.  And finally it's probably |
| 11 | important to note that your sentencing range, according to this |
| 12 | stipulation, is between 18 and 24 months, and there are no |
| 13 | agreements here as to where in that range you'll be sentenced. |
| 14 | Do you understand that that determination will be made |
| 15 | by Judge Wake at your sentencing?  Do you understand that? |
| 16 | THE DEFENDANT:  Yes, ma'am. |
| 17 | THE COURT:  If I recommend today that your plea be |
| 18 | accepted, do you understand that Judge Wake could accept it |
| 19 | today, tomorrow, or any day really up to and including the day |
| 20 | of your sentencing?  Once he does accept it, however, after |
| 21 | that you won't be permitted to withdraw from it unless he |
| 22 | rejects the sentencing agreements that you have with the |
| 23 | government.  Do you understand that? |
| 24 | THE DEFENDANT:  Yes, ma'am. |
| 25 | THE COURT:  And if he rejects them, he would tell you |

1    that before sentencing you and give you the opportunity at that

2    point to withdraw from your plea.  If, however, he accepts your

3    plea, and then he sentences you consistent with the terms of

4    this plea agreement, by the terms of your plea agreement, you

5    have given up your right to appeal your judgment and sentence

6    to a higher court, and you've given up your right to come back

7    before this court in a collateral proceeding to challenge your

8    judgment and sentence.  Do you understand that?

9              THE DEFENDANT:  Yes, but I have a question.

10             THE COURT:  Did you want to ask your attorney first,

11   or do you want to ask me?

12             That's probably advisable.

13      (Off-the-record discussion.)

14             THE DEFENDANT:  I understand.

15             THE COURT:  Now, after you serve your sentence, you

16   will then be placed upon a period of supervised release.  And

17   this is like probation in that while you're on that

18   supervision, you'll be required to follow certain conditions

19   imposed by the Court.

20             Do you understand if you were then to violate any of

21   those conditions, you could receive more time in prison in this

22   case?  Do you understand that?

23             THE DEFENDANT:  Yes, ma'am.

24             THE COURT:  And if you were to commit another crime

25   against the United States -- by that I don't mean to imply

1   that's what you're going to do -- but if you were to do that,

2   do you understand that this conviction here could make whatever

3   sentence that you would be looking at in that case more severe

4   or more harsh than it otherwise would be?

5           THE DEFENDANT:  Yes, ma'am.

6           THE COURT:  Are there any other collateral

7   consequences to this conviction that I should be advising

8   Mr. Abdallah of, Mr. Pimsner?

9           MR. PIMSNER:  Not that I'm aware of, Your Honor.  The

10  defendant did naturalize.  He is a United States citizen.

11          THE COURT:  All right.  Thank you.  Anything,

12  Mr. Shemaria, that you can think of?

13          MR. SHEMARIA:  No, Your Honor.

14          THE COURT:  All right, sir.  As a person accused of a

15  crime, you have certain rights that are guaranteed to you by

16  the United States Constitution.  I'm going to go over some of

17  those rights with you now.

18          You have the right to be represented by an attorney at

19  no cost to you throughout all stages of the criminal

20  prosecution, including trial and sentencing if the verdict were

21  to go against you.

22          Have you been satisfied with your attorney in this

23  case thus far?

24          THE DEFENDANT:  Say that again.

25          THE COURT:  Have you been satisfied with your

1    attorney's representation thus far?

2           THE DEFENDANT:  Yes, ma'am.

3           THE COURT:  If you did not plead guilty here today,

4    you'd have the right to go to trial, and you would have the

5    right to a jury trial.  A jury trial is the random selection of

6    12 citizens from this district.  You and your attorney could

7    help pick this jury, and you could not be convicted of this

8    crime unless all 12 of those jurors were first convinced of

9    your guilt.  Do you understand this?

10          THE DEFENDANT:  Yes.

11          THE COURT:  At your trial, the jury would be told that

12   you are presumed innocent of this crime, and that means the

13   government would have to prove your guilt beyond a reasonable

14   doubt.  This burden is always on the government, and it never

15   would shift to you to prove that you are innocent.  Do you

16   understand this?

17          THE DEFENDANT:  Can you repeat it again?  Because I

18   lost you.

19          THE COURT:  Where did you lose me?  How far ago?

20          THE DEFENDANT:  Last sentence.

21          THE COURT:  How long ago?

22          All right.  If at your trial, if you went to trial,

23   the jury would be told that you are presumed innocent of this

24   crime.  And that means the government at your trial would have

25   to prove your guilt beyond a reasonable doubt.  This burden is

1    always on the government, and it would never shift to you to

2    prove that you are innocent.  Do you understand this?

3              THE DEFENDANT:  Yes, ma'am.

4              THE COURT:  Also, proof beyond a reasonable doubt

5    means that the government would have to present sufficient

6    evidence to satisfy at least each and every juror of your guilt

7    before that jury would be justified in voting to find you

8    guilty.

9              In your case, if you did go to trial, the government

10   would have to prove the following to this jury beyond a

11   reasonable doubt before you could be convicted of this crime:

12             That on or between January 24, 2007, and January 27th,

13   2007, in the District of Arizona, that you made a false

14   statement in a matter within the jurisdiction of the FBI;

15             That you acted willfully, that is, deliberately, and

16   with knowledge that the statement was untrue;

17             That the statement was material to the FBI's

18   activities or decisions, and that being that it could have

19   influenced the agency's decisions or activities.

20             Do you understand that's what the government would

21   have to prove to convict you of this crime at a trial?

22             THE DEFENDANT:  Yes, ma'am.

23             THE COURT:  You would also have the right at this

24   trial to have the government witnesses come to court and

25   testify against you in your presence and under oath and then be

1  cross-examined by your attorney.

2         After this, you would have the right to present your

3  own case, call your own witnesses, and use the subpoena power

4  of the Court to compel your witnesses to appear.  Do you

5  understand this?

6         THE DEFENDANT:  Yes, ma'am.

7         THE COURT:  You'd also have the right at your trial to

8  remain silent and not present any evidence, and the jury would

9  be told that the jury could not use this silence against you in

10 any way.  Do you understand this?

11        THE DEFENDANT:  Yes.

12        THE COURT:  If you plead guilty here today, obviously

13 none of these things will happen.  There would be no jury, no

14 trial, no witnesses.  Instead, the statements you make here in

15 court today will establish your guilt.  Do you understand this?

16        THE DEFENDANT:  Yes.

17        THE COURT:  Do you want to waive your right to a jury

18 trial, then, and enter a plea of guilty today?

19        THE DEFENDANT:  Yes.

20        THE COURT:  All right.  Mr. Abdallah, then, to the

21 charge in the indictment, then, Count 1, how do you plead?

22 Guilty or not guilty?

23        THE DEFENDANT:  (Indiscernible.)

24        THE COURT:  To the charge in the indictment, this

25 charge of false statements, do you plead guilty or not guilty?

UNITED STATES DISTRICT COURT

1          THE DEFENDANT:  Guilty.

2          THE COURT:  Before I can recommend whether or not your

3    plea should be accepted, I have to make sure there are

4    sufficient facts to support it.  And I'm looking at Page 6 of

5    your agreement.  I'm going to go over this with you.

6          It says here on or between January 24 and January 27

7    in the District of Arizona, that you knowingly and willfully

8    made a false, fraudulent, and fictitious material statement to

9    special agents of the FBI.

10          And the specifics of this are that on the date, on

11   those dates, you were being interviewed by FBI agents in

12   connection with the federal investigation and prosecution of

13   the Holy Land Foundation for Relief & Development and its

14   officers.

15          Is that true that you were being interviewed on or

16   about those dates in connection with that investigation?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Is it also true that at the time of these

19   interviews, you knew that this foundation was a specially

20   designated terrorist organization?

21          THE DEFENDANT:  I never knew the nature of it.  The

22   FBI agents told me.

23          THE COURT:  All right.  So during the interview you

24   were told that this was a specially designated terrorist

25   organization?

1          THE DEFENDANT:  Yes.

2          THE COURT:  This came up during the interview?

3          THE DEFENDANT:  Yes.

4          THE COURT:  All right.  And that you knew that this

5   foundation and its officers were pending trial in Texas for

6   crimes including providing material support to a foreign

7   terrorist organization.  Is that true?

8          THE DEFENDANT:  That's right.

9          THE COURT:  I'm sorry?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Also, during the interviews, it says here

12   you represented to FBI agents that you were not involved in

13   fundraising activities for this foundation.  Is that true?

14          THE DEFENDANT:  Yes.

15          THE COURT:  When in fact between 1994 and 1997, you

16   were involved in numerous fundraising activities.  Is that

17   true?

18          THE DEFENDANT:  To the best of my understanding, I

19   don't remember that, but I, however, I accept what I said, the

20   results of that interview.

21          THE COURT:  Well, this is -- We're not talking about

22   results of an interview.  We're talking about whether or not

23   between those dates you were involved in numerous fundraising

24   activities.  And is that true?

25          (Off-the-record discussion.)

1          THE DEFENDANT:  I would like to explain it clearly.

2          THE COURT:  All right.

3          THE DEFENDANT:  When the Holy Land Foundation come to

4    town, I remember one time in a hotel that I did not reserve

5    that hotel.

6          THE COURT:  You did not what?

7          THE DEFENDANT:  I didn't make reservation.

8      (Off-the-record discussion.)

9          THE DEFENDANT:  What did I do in that one?

10         I helped inside the hall what is to be the

11   fundraising.  I helped inside to carry some from the back and

12   pass it to the front.  I did not hold no microphone.  I didn't

13   make no fundraising.  I didn't help more than this.  But I was

14   participating.

15     (Off-the-record discussion.)

16         THE DEFENDANT:  I agree with that paragraph that I was

17   helping when they come to town.

18         THE COURT:  All right.  Well, really the gravamen of

19   this crime is that you made a statement that was false, and the

20   statement that you made was that you were not involved in

21   fundraising activities.  So what makes it false is if you were

22   in fact during that time involved in fundraising activities for

23   this foundation.  Were you involved in fundraising activities

24   for this foundation during that time?

25         THE DEFENDANT:  I was involved, but maybe I

1    misunderstood it when they said it's false statement.  As a

2    fundraiser, I didn't do anything, but I was helping -- I

3    mentioned this many times in the meeting.  I said the events,

4    how you helped.  They gave me the opportunity to say how did

5    you help.  Over the phone we told them I'm willing to help.

6    That's correct.

7         (Off-the-record discussion.)

8              MR. PIMSNER:  Your Honor, the defendant, I think, is

9    trying to distinguish the fact that the person that was

10   actually up speaking on behalf of the Holy Land and his

11   activities, his activities include, as we list in the factual

12   basis, that he was collecting donations on behalf of the

13   organization.  He helped organize the events.  He facilitated

14   the events and coordinated these events on behalf of Holy Land

15   in the Phoenix area.

16             THE COURT:  All right.  Well, let me clarify, then, if

17   that was confusing that I said it too generally.

18             It says here that you collected donations, organized,

19   facilitated, and coordinated fundraising events on behalf of

20   this foundation in the Phoenix metropolitan area.  Is that

21   true?

22        (Off-the-record discussion.)

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.

25             All right.  And, Mr. Pimsner, was the statement that

1    we've referenced here, is it material to the FBI's activities

2    or decisions in this investigation?

3              MR. PIMSNER:  It was, Your Honor.  The FBI was

4    continuing to investigate the Holy Land Foundation while it was

5    pending trial in Texas.  They were interviewing potential

6    witnesses that could help them explain how the case -- how the

7    Holy Land operated.  And this defendant basically lied during

8    the course of the interview regarding his activity.

9              THE COURT:  All right.  Do you have any reason to

10   dispute what the government has just said its evidence would

11   indicate if this matter were to go to trial, that it was

12   material to the FBI's investigation?

13             UNIDENTIFIED SPEAKER:  Me?

14             THE COURT:  Well, Mr. Abdallah.

15             THE DEFENDANT:  What was the question again?

16             THE COURT:  Do you have any reason to dispute what the

17   government just said?

18             THE DEFENDANT:  The words are too -- too big.  I did

19   not facilitate.  I did not cooperate.  I helped them as a host.

20             When they come here, any other organization came here,

21   I always there -- I helped.  But bottom line, yes, I did help,

22   if this is enough to describe, you know, that article or that

23   line, to explain, I mean, that line.

24             MR. SHEMARIA:  Is the government satisfied?

25             MR. PIMSNER:  Your Honor, he needs to acknowledge the

```
1    language in the factual basis that's been agreed upon.   If he

2    does not acknowledge that, then we may need to take a brief

3    recess.

4              THE COURT:  Well, yeah.  The main point here is that

5    you were -- Well, and he's already said he was collecting

6    donations, organizing, facilitating, and coordinating

7    fundraising activities on behalf of the foundation.  I think

8    he's already admitted to that; isn't that correct,

9    Mr. Abdallah?

10             THE DEFENDANT:  Collecting I don't remember, no, but I

11   was with them when they come to town.

12             THE COURT:  Well, being with them is not enough,

13   because it says here you told the FBI you were not involved in

14   fundraising activities.  I know that's a broad category.  But

15   if you were in fact involved in some activities that were

16   related to fundraising, then it seems to me that that would

17   have been false.  Is that what you were doing?

18             THE DEFENDANT:  Yes, ma'am.

19             THE COURT:  You were involved in some fundraising

20   activities, correct?

21             THE DEFENDANT:  When I answered, I thought the

22   question --

23        (Off-the-record discussion.)

24             THE DEFENDANT:  I was there, but I did not fundraise

25   money for them.  But I was there.  I was involved in their
```

```
 1    fundraising.
 2        (Off-the-record discussion.)
 3            MR. SHEMARIA:  I think what Mr. Abdallah is trying to
 4    say is he did assist between 1994 and 1997.  Correct me if I'm
 5    wrong.
 6            THE DEFENDANT:  Yes.
 7            MR. SHEMARIA:  He did assist in numerous fundraising
 8    activities including the collection of donations, organizing,
 9    facilitating, and coordinating various fundraising events on
10    behalf of HLF in the Phoenix metropolitan area.
11            THE COURT:  All right.  So there's no dispute about
12    that, correct?
13            MR. SHEMARIA:  Is that a fair statement?
14            THE DEFENDANT:  Yes.
15            THE COURT:  That's a fair statement?  Yes?
16            THE DEFENDANT:  Yes.
17            THE COURT:  All right.  Then is the government
18    satisfied with the factual basis?
19            MR. PIMSNER:  Yes, Your Honor.  But if I may ask the
20    Court, I believe the Court has not discussed his waiver of
21    appellate rights with him at this point.
22            THE COURT:  I did.
23            MR. PIMSNER:  You did?
24            THE COURT:  I did.
25            MR. PIMSNER:  Sorry.
```

```
1            THE COURT:  All right.  And, Mr. Pimsner, can you avow
2    as well that if this matter were to proceed to trial, the
3    government could prove those facts beyond a reasonable doubt?
4            MR. PIMSNER:  Yes, Your Honor.  May I have a moment?
5            THE COURT:  Yes.
6       (Off-the-record discussion.)
7            MR. PIMSNER:  Your Honor, I would ask that you do ask
8    the defendant to affirm that this matter was material to a
9    matter within the jurisdiction of the FBI.  They were looking
10   for witnesses for this trial.  His information would have been
11   helpful to that trial.  And he basically denied his
12   involvement.
13           So if he can affirm that it was material, that the
14   information that -- that the lie was material to the FBI, we
15   would appreciate that.
16           THE COURT:  Well, Mr. Morrissey must have been reading
17   my mind, because I was going to follow it up with I don't think
18   he necessarily -- his opinion as to whether or not it's
19   material is important here.  You've indicated it was material,
20   and you've indicated in what way it was material.  That's what
21   I was trying to get at with him earlier, is whether or not he
22   disagreed with that.
23           Do you agree with what the government has just stated
24   with respect to how this false statement was material to their
25   investigation?  Do you disagree with the government's statement
```

1   with respect to that?

2        (Off-the-record discussion.)

3             THE DEFENDANT:  I agree.

4             THE COURT:  All right.  Anything further, then, with

5   respect to that?

6             MR. PIMSNER:  No, Your Honor.  Thank you.

7             THE COURT:  All right.  Mr. Abdallah, I do find that

8   your plea is knowingly, intelligently, and voluntarily made,

9   that you're competent to enter this plea, and that there are

10  facts to support it.

11            I am going to recommend that your plea be accepted.

12            Your sentencing, sir, is set for Monday, August 17th,

13  2009, at 1:30 p.m. before Judge Wake.

14            And it's ordered that a presentence report be

15  prepared.

16            I should have asked the parties:  There is a

17  stipulation to a prison sentence.  Is there any agreement at

18  this point as to whether or not he would be surrendering on the

19  day of his sentencing or there would be a delayed surrender?

20  Have you --

21            MR. PIMSNER:  There are no agreements as to that at

22  this point.

23            THE COURT:  All right.  Thank you.

24            MR. SHEMARIA:  Thank you, Your Honor.

25       (Proceedings recessed at 4:20 p.m.)

1                      **C E R T I F I C A T E**

2

3           I, LINDA SCHROEDER, court-approved transcriber,

4     certify that the foregoing is a correct transcript from the

5     official electronic sound recording of the proceedings in the

6     above-entitled matter.

7

8           DATED at Phoenix, Arizona, this 27th day of May, 2009.

9

10                                   s/Linda Schroeder
11                                   Linda Schroeder

12

13

14

15

16

17

18

19

20

21

22

23

24

25